# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| VALERIE SMALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:13CV248 |
| | ) | |
| NORTH CAROLINA A&T STATE | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a former employee of Defendant North Carolina Agricultural and Technical State University ("NCA&T), brought this action alleging, *inter alia*, wrongful discharge, violation of the Equal Pay Act, discrimination based on race and gender, and retaliatory discharge. The matter is before the court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 19.) Plaintiff has responded to the motion and the matter is ripe for disposition. For the reasons that follow, it is recommended that Defendant's motion be granted.

## I. FACTUAL BACKGROUND[1]

Plaintiff was initially employed at NCA&T in September 2003 in a temporary, full-time, grant-funded position in the Department of Information Technology ("DoIT"). (Compl. ¶ 4, Docket Entry 2; Def.'s Mot. Summ. J. Ex. 5, Declaration of Linda McAbee ¶ 6,

---

[1] These facts are viewed in the light most favorable to Plaintiff. For the most part, the operative facts are undisputed and are drawn from the complaint, the depositions of the parties and the affidavits and declarations submitted by the parties. The parties disagree over the inferences to be drawn from the facts.

Docket Entry 19-5; Pl.'s Response Br., Ex. A, Affidavit of Valerie Small ¶ 3, Docket Entry 26-1.) Plaintiff was employed on a year-to-year basis through September 30, 2007. (Compl. ¶¶ 7, 9; McAbee Decl. ¶ 8.) Plaintiff's position was originally listed as both an Applications Analyst Programmer I and a Data Base Software Analyst; these two positions had the same salary grade under the State Office of State Personnel ("OSP") guidelines. (McAbee Decl. ¶ 7; Small Aff. ¶ 4.) In September 2006, NCA&T began the process of converting positions from a graded classification system to "career banding." (McAbee Decl. ¶ 9.) This process involved "cross-walking," a system of mapping which "translated each position in the old classification system to a position in the new classification system, without regard for any particular employee in any particular position." (*Id.*) Under the new system, Plaintiff's job title was changed from Applications Analyst Programmer I to Business and Technology Applications Analyst; her position number, salary, and time limit remained unchanged. (McAbee Decl. ¶ 10.)

On July 31, 2007, Plaintiff was informed that the funding for her position had run out, and that her position would be terminated on September 30, 2007[2]. (*Id.* ¶ 11; Small Aff. ¶ 23; Compl. ¶ 22.) On August 3, 2007, Plaintiff filed a grievance pursuant to Defendant's Grievance Policy, contending that because she had been employed by NCA&T for over three years, her position was permanent and she could not be terminated. (Employee Grievance and Appeal Filing Form, McAbee Decl., Ex. 7, Docket Entry 19-5 at 23; *see also* Compl. ¶ 23.) Plaintiff also raised others issues in the grievance, alleging that she

---

[2]  Plaintiff refers to this action as the first reduction-in-force ("RIF").

had been retaliated against because she had sent a list of ITT problems to the NCA&T Chancellor and other officials. (*Id.*)

After Plaintiff filed her grievance, a new Business and Technology Applications Analyst position was created for her in the Office of Student Affairs, to start on October 1, 2007. (McAbee Decl. Ex. 8.) Plaintiff was transferred to this position, without a break in service, and retained the same salary. (McAbee Decl. ¶ 14; McAbee Decl. Ex. 9; Compl. ¶ 33.)

After Plaintiff's transfer to the Student Affairs division, she was placed on investigatory leave with pay and was disciplined for unacceptable personal conduct. This conduct, which occurred in August 2007 before her transfer, involved unauthorized access of personal information of former and current NCA&T employees. Plaintiff received a one-week suspension without pay. (Compl. ¶¶ 27-31; McAbee Decl. ¶ 15.) Plaintiff contends that the conclusions of the disciplinary process were incorrect because she was authorized to access all information in the different University databases and she "did not know at the time that the written authorization for [her] to have access to these databases was not in [her] personnel file." (Small Aff. ¶ 31.) Plaintiff also contends that the suspension she received was in retaliation for her reporting problems in the DoIT. (*Id.* ¶ 32.) Although the conduct for which she was disciplined occurred while Plaintiff was still working in DoIT, the disciplinary process was issued by Sullivan Welbourne, the Vice Chancellor for Student Affairs, because Plaintiff had already been transferred to Student Affairs at the time the disciplinary letter was issued. (Compl. ¶ 27-31; McAbee Decl. ¶ 15; Small Aff. ¶ 30.)

In early November 2007, after her one-week suspension, Plaintiff began working for Leonard Jones, Director of Housing and Residential Life in the Division of Student Affairs. (Compl. ¶ 32; McAbee Decl. Ex. 10; Small Aff. ¶ 33.) According to Plaintiff, Mr. Jones was "notoriously difficult to work with and was disposed to confrontations and threats of violence." (Small Aff. ¶ 33.) Also in November 2007, Linda McAbee was hired by NCA&T as the Vice Chancellor of Human Resources. (McAbee Decl. ¶ 3.)

McAbee soon learned that Plaintiff believed that her position was improperly classified. According to Plaintiff, she claimed that she had received a promotion in 2006 which was never implemented. Plaintiff alleges that on August 17, 2006,[3] she was granted a promotion to the position of Database Administration Manager, and that Plaintiff and her supervisor at that time, Sam Harrison, together with Vice Chancellor for IT, R.E. Harrigan, executed a Position Description Form (PD-102R), effective August 15, 2006, to reflect this promotion. (Compl. ¶ 12; Compl. Ex. 1; McAbee Decl. ¶ 30.) Plaintiff contends that she confirmed the terms of the promotion in a letter dated November 9, 2006 to the Interim Vice Chancellor of ITT. (Compl. ¶ 14; Compl. Ex. 2.) According to McAbee, such a position reclassification would have required the approval of both NCA&T's Human Resources Department and OSP; there is no record of any such approval. (McAbee Decl. ¶ 30.) In investigating this matter, and reviewing contemporaneous e-mails, McAbee learned that a dispute had arisen between Plaintiff and NCA&T officials over Plaintiff's proposed salary, and that Harrigan left NCA&T before the dispute was resolved. (*Id.* ¶ 31.) Harrigan's

---

[3] In her complaint, Plaintiff lists this date as August 17, 2016, clearly a typographical error. The context of these allegations, together with the documents referred to and submitted as exhibits show that these events occurred in 2006. (*See* Compl., Ex. 1, Docket Entry 2-1.)

replacement, Dr. Vijay Verma, decided not to proceed with the reclassification of Plaintiff's position. (*Id.*) Thus, Plaintiff remained as an Application Analyst Programmer I until her position was cross-walked to a Business and Technology Applications Analyst. Her new position in 2007, created to avoid her termination, was likewise classified as a Business and Technology Applications Analyst, resulting in a horizontal transfer on October 1, 2007. (McAbee Decl. ¶ 10.)

Plaintiff also informed McAbee that her job duties and position classification were not consistent. (McAbee Decl. ¶ 26.) Plaintiff believed that she had been passed over for market value increases which had been given to certain IT positions; she believed that she was performing duties of a Database Manager but was not being compensated for such. McAbee, in attempting to address Plaintiff's concerns, directed her compensation analyst to look at Plaintiff's duties and position classification. In doing so, McAbee set up a meeting with Plaintiff's supervisors (Welbourne and Jones), Loleta Chavis, a compensation analyst, and Sheila Benton, who had previously served as Interim Director of Human Resources before McAbee was hired. (Compl. ¶¶ 43-45.) According to McAbee, it is the duty of management, not Human Resources, to determine an employee's job duties. (McAbee Decl. ¶¶ 28-29).

Jones, who was Plaintiff's immediate supervisor in Student Affairs, assigned Plaintiff's job duties. Following the meeting with HR and Plaintiff's supervisors, it was determined that Plaintiff was properly classified as a Business and Technology Applications Analyst, at the Journey level, and that the duties assigned by Jones were consistent with

Plaintiff's classification. Jones was directed to proceed with his evaluation of Plaintiff's job performance. (*See* McAbee Decl. Ex. 14.)

In a meeting with Jones in July 2008, Plaintiff and Jones had an argument over Plaintiff's job duties and the proper classification for her position. (Compl. ¶ 50; Pl.'s Dep. 2/29/12 at 103-04; 116-18.) Plaintiff was disciplined following this meeting for slamming the door when leaving Jones' office. (Compl. ¶¶ 52, 55.) In a letter to Welbourne on July 17, 2008, Plaintiff claimed that Jones was intimidating and harassing, and on August 28, 2008 she filed a grievance alleging such behavior on the part of Jones. (Compl. ¶ 51, 54; McAbee Decl. ¶¶ 33-35, 37; McAbee Decl. Ex. 18.)

On August 18, 2008, Welbourne reassigned Plaintiff to work under the supervision of Ryan Maltese, the Director of the University Events Center in the Division of Student Affairs. (Compl. ¶ 56; McAbee Decl. ¶ 35; McAbee Decl. Ex. 16.) Maltese completed a performance evaluation for Plaintiff in May 2009. (Def.'s Mot. Summ. J., Declaration of Melody Pierce, Ex. 2, Docket Entry 19-6.) While Plaintiff noted on the evaluation that she believed the Career Banded Title for her position was still incorrect, she did not file any grievances after she began working under Maltese's supervision. (Pl's Dep. 2/29/12 at 130-31; McAbee Decl. ¶ 39.)

In 2009, NCA&T advertised an IT Manager/Database Administrator position. Plaintiff did not apply for the position. (McAbee Decl. ¶ 44.) Jeffrey Mueller was hired for the position, effective May 7, 2009. (*Id.*) Mueller resigned less than a year later and the position was again advertised in 2010. (*Id.*) Plaintiff did not apply for the position at that time either. NCA&T hired Gary Burns for the position effective June 1, 2010. (*Id.*)

In April 2010, Barbara Ellis was hired as Interim Vice Chancellor for DoIT. (Def.'s Mot. Summ. J., Ex. 3, Declaration of Barbara Ellis ¶ 3, Docket Entry 19-3.) In June 2010, Melody Pierce was hired as Vice Chancellor for Student Affairs. (Pierce Decl. ¶ 3.) Soon after her hiring, Pierce learned that Plaintiff's position was the only technical position in Student Affairs and because neither Pierce nor Maltese had technical expertise, it would be more efficient to move the support of the R25 application, which was Plaintiff's primary responsibility, back within DoIT. Ellis determined that DoIT could absorb the duties accompanying R25 with its existing staff. The transfer of the R25 application to DoIT meant that Plaintiff had no remaining duties. Pierce therefore made the decision to eliminate Plaintiff's position; on March 14, 2011, Pierce submitted a request for authorization of a reduction in force ("RIF") to Human Resources. (Ellis Decl. ¶¶ 5-8; Pierce Decl. ¶¶ 7-9; Pierce Decl. Ex. 1; McAbee Decl. ¶ 14; McAbee Decl. Ex. 19.) Following approval of the RIF request, Plaintiff was laid off effective April 15, 2011. (McAbee Decl. ¶ 42; McAbee Decl. Ex. 21.)

On March 17, 2011, Plaintiff filed a Petition in the North Carolina Office of Administrative Hearings ("OAH") alleging that the elimination of her position was due to discrimination based on race or gender and/or retaliation. In an Order dated May 24, 2013, the Administrative Law Judge ("ALJ") found that Plaintiff had not met her burden to prove discrimination or retaliation. (Def.'s Br., Ex. 1, OAH Order, Docket Entry 20-1.) The North Carolina State Personnel Commission ("SPC") adopted the findings and conclusions of the ALJ on November 13, 2013. (Def.'s Br., Ex. 2, SPC Order, Docket Entry 20-2.) At

the time of briefing in this matter, Plaintiff's petition for judicial review of the SPC's decision was pending in Guilford County Superior Court.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 15, 2011, alleging that she had been discriminated against on the basis of sex and that she had been retaliated against for complaining of discrimination. (Pl.'s Dep. 3/20/14 at 68; and Ex. 5.)

On February 21, 2013, Plaintiff filed this action in the Guilford County Superior Court. (Docket Entry 2.) On March 27, 2013, Defendant removed the case to this court pursuant to 28 U.S.C. § 1446(d). (Petition for Removal, Docket Entry 1.) Defendant filed the motion for summary judgment on May 2, 2014 (Docket Entry 19) and Plaintiff responded to the motion on June 30, 2014. (Docket Entry 26.)

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Holland*, 487 F.3d at 213. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *See Anderson*, 477 U.S. at 248. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *See id.* at

249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

> A party opposing a properly supported motion for summary judgment
>
> may not rest upon the mere allegations . . . of [her] pleadings, but rather must set forth specific facts showing that there is a genuine issue of trial. Furthermore, neither [u]nsupported speculation, nor evidence that is merely colorable or not significantly probative will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of [a]ny proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks and citations omitted).

**B. Discussion**

In her response to Defendant's motion for summary judgment, Plaintiff concedes that she does not have a claim for wrongful discharge in violation of public policy. (Pl.'s Br. Opp. Summ. J. at 7, Docket Entry 27.) Further, Plaintiff also concedes that "her claim for interference with employment rights . . . principally sounds in tort, and therefore is properly subject to the defense of sovereign immunity." (*Id.*) Accordingly, the court will not consider the motion for summary judgment as to these two claims, the first and fifth claims for relief in the Complaint. What remains for summary judgment consideration, therefore, are three claims: (1) violation of the Equal Pay Act; (2) retaliatory discharge; and (3) discriminatory discharge.

**1. Equal Pay Act Claim (Claim 2)**

In her second claim for relief, Plaintiff alleges that Defendant paid male co-workers more for performing the same work in violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). In the sole factual allegation as to this claim, Plaintiff contends that "[D]efendant intentionally required [P]laintiff to perform the duties of Database Administrator without compensation for that position, but employed men, most of whom were Caucasian, as Database Administrators with annual compensation of $95,000 or higher." (Compl. ¶ 68.)

The Equal Pay Act provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of productions; or (iv) a differential based on any factor other than sex.

29 U.S.C. § 206(d)(1).

The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See Strag v. Bd of Trustees*, 55 F. 3d 943, 948 (4th Cir. 1995). In this case, Plaintiff must show: (1) Defendant paid her less than a male co-employee; (2) that the said employee performed work requiring equal skill, effort and responsibility; and (3) that they performed this work under similar working conditions. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 161 (1992). Plaintiff must identify a particular male "comparator" for purposes of this inquiry. *Strag*, 55 F.3d at 948. "[A]n Equal Pay Act plaintiff cannot rest on the bare allegation that she is

receiving lower pay for equal work; she must also show that the comparison she is making is an appropriate one." *Id.* at 950.

In its motion for summary judgment, Defendant argues that the statute of limitations limits the relevant time period for Plaintiff's Equal Pay Act claim. The statute of limitations for a claim under the Equal Pay Act is two years, except where a plaintiff proves a willful violation, in which case the period is three years. 29 U.S.C. § 255(a). In order to prove a willful violation, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).[4]

Plaintiff here filed her complaint on February 21, 2013. Thus, even if she were to prove a willful violation, she could not recover damages for the period prior to February 21, 2010. Plaintiff appears to agree with this argument: "Plaintiff has demonstrated . . . that this violation is not only willful, it is deliberate and retaliatory. The statute allows for three years for such a deliberate and willful violation, reaching back to at least February 2010." (Pl.'s Br. at 12, Docket Entry 27.)

Plaintiff faces a bigger hurdle than the statute of limitations, however. Plaintiff has simply not put forth any credible evidence that shows that she was paid less than any male co-workers with jobs requiring equal skill, effort, and responsibility during the relevant period. By February 21, 2010, Plaintiff had been working for several years in the

---

[4] *McLaughlin* was a overtime pay case under the Fair Labor Standards Act ("FLSA"). The Court was faced with the meaning of the word "willful" as used in the statute of limitations applicable to civil actions to enforce the FLSA. This court notes that the "Equal Pay Act" is contained in the FLSA. Thus, while the claim in *McLaughlin* was not an equal pay claim, the statute of limitations discussion in that case is applicable to all types of claims under the FLSA.

Department of Student Affairs, not DoIT, as a Business & Technology Applications Analyst. The only male comparator she identifies, Gary Burns, was hired on June 1, 2010 to a position advertised and classified as an IT Manager/Database Administrator. Plaintiff and Burns' positions did not require equal skill, effort and responsibility. Plaintiff believed that her position was misclassified, but as found by the Administrative Law Judge, Plaintiff remained at the same salary grade and position from 2006 until her position was eliminated in 2011. (Def.'s Br. Ex. 1, OAH Decision ¶ 30, Docket Entry 20-1.) Her position was at salary grade 76, while Burns' position carried a salary grade of 81.

Defendant put forward evidence that Burns' position as a manager involved a greater level of skill, effort and responsibility. In her declaration, Renee Martin, an IT Director in the DoIT since 1997, stated:

> The jobs performed by Mr. Burns and Ms. Small in 2010 did not require equal responsibility. Although Ms. Small had some duties in common with a database administrator, she was responsible for the R25 application only. Mr. Burns was responsible for all of the University's databases, many of which were enterprise-wide systems, unlike the R25 application. For example, Mr. Burns was responsible for Banner databases, which includes modules for Advancement (donations to the University), Finance, Human Resources, and Financial Aid; the One-Card database, which provides student services; and J Point database cashiering systems, among others. Mr. Burns' applications have over 13,000 users. By contrast, the application Ms. Small was responsible for in 2010 has around 3,000-5,000 users. If the R25 application were to go down, University scheduling activities could not occur and campus events could be double booked into the same room. If the Banner applications were to go down, student registration, grading, and student financial aid processing would not occur. Financial operations for the university would be severely impacted. Furthermore, Mr. Burns supervises another employee, a database analyst. Ms. Small's performance evaluations do not reflect any supervisory duties.

(Declaration of Renee Martin ¶ 13, Docket Entry 19-4.)

In determining whether jobs are substantially equal for the purposes of the EPA, a plaintiff need not show that her position and that of her male comparator are identical in every respect. *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 856 (D. Md. 2000). Instead, rather than relying upon particular job titles, a plaintiff "must show that she and her male counterpart performed substantially equal work in term of 'skill, effort and responsibility.'" *Id.* (*quoting Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972). A job will not automatically be deemed to involve equal effort or responsibility simply because it includes most of the same general duties. *Wheatley v. Wicomico County, Md.*, 390 F.3d 328, 333 (4th Cir. 2004). A job will be considered unequal "despite having the same general core responsibilities – if the more highly paid job involves additional tasks which (1) require extra effort . . . (2) consume a significant amount of the time . . . and (3) are of an economic value commensurate with the pay differential." *Id.* (*citing Hodgson*, 454 F.2d at 493).

The evidence in the record shows that during the relevant period Plaintiff was responsible primarily for maintaining one application, the R25 application which was used for scheduling events on campus. In her brief, Plaintiff claims that NCA&T treated her as a Database Administrator, pointing to her job evaluations for 2008-2009 and 2009-2010, which list her "Working Title" as R25 Database Administrator. (Pl.'s Br., Exs. A-61, A-62, Docket Entries 26-42, 43.) However, even this title, noted only on the evaluation forms, suggests that Plaintiff's primary responsibility was for the R25 database. Additionally, the definitions and assessments of competency listed on the evaluations deal primarily with the R25 application. Plaintiff asserts that she worked with other applications, and indeed, the

evaluations show that she was assigned some other duties, including web design for the Division of Student Affairs, but even she does not claim that she was responsible for maintaining all the various databases for which Burns, the male comparator, was responsible. Additionally, the evidence shows that Plaintiff had no supervisory responsibilities, unlike Burns.

Plaintiff has not put forward evidence which demonstrates that she held a job requiring the same skill, effort, and responsibility as that of a male who was paid more than her. Even viewing the facts in the light most favorable to Plaintiff and weighing the evidence in her favor, there exists no genuine issue of material fact that the salary differential between Plaintiff and Burns was based on gender discrimination. Accordingly, the Court recommends that Defendant's motion for summary judgment on Plaintiff's Equal Pay Act claim be granted.

### 2. Retaliation Claim (Claim Three)

Plaintiff asserts a claim for retaliation pursuant to Title VII of the Civil Rights Act of 1964 in Claim Three. Title VII provides that it is unlawful:

> for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). A fundamental requirement of such a claim is that the retaliation against the employee be based upon that employee raising charges of non-compliance with the provisions of Title VII, *i.e.*, an employment practice. *Id.* Title VII "is not a general bad acts statute . . . and it does not prohibit private employers from retaliating against an

employee based on her opposition to discriminatory practices that are outside the scope of Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011); *see also Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997) ("Title VII prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by title VII."); *Patterson v. Western Carolina Univ.*, No. 2:12cv3, 2012 WL 6851306, at *2 (W.D.N.C. Nov. 26, 2012) (unpublished) (*quoting Litman v. George Mason Univ.*, 156 F. Supp. 2d 579, 584 (E.D. Va. 2001)) ("[Title VII] provides a remedy only for those who suffer retaliation after charging noncompliance with Title VII itself, *e.g.*, those who complain of discriminatory employment practices.").

In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for claims pursuant to Title VII. Under the *McDonnell Douglas* analysis, Plaintiff has the initial burden of demonstrating a *prima facie* case of retaliation. A plaintiff can meet this burden by proving three elements: "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *Balas v. Huntington Ingall Indus., Inc.*, 711 F.3d 401, 410 (4th Cir. 2013) (*quoting EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)); *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998); *Causey v. Balog*, 162 F. 3d 795, 803 (4th Cir. 1998). If a plaintiff establishes a *prima facie* case, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its actions. The plaintiff then must present evidence sufficient to create a genuine issue of material fact that the defendant's

legitimate, non-retaliatory reason is pretextual. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

The Supreme Court recently held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Med. Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013). The Fourth Circuit Court of Appeals has noted that in the retaliation context, *Nassar* requires that a plaintiff "retains the ultimate burden of persuading the trier of fact . . . that her engagement in the protected activities was a 'but-for' cause of" the alleged adverse employment action. *Staley v. Gruenberg*, No. 13-1875, 2014 WL 2535403, at *1 (4th Cir. Jun. 6, 2014) (unpublished) (citing *Nassar*, 133 S. Ct. at 2533) (internal quotation and citation omitted). Indeed, several courts in this Circuit have held that the "but-for" causal link required by *Nassar* applies at the summary judgment stage. *See Foster v. Univ. of Md. E. Shore*, Civ. No. TJS-10-1933, 2013 WL 5487813, at * 6 (D. Md. Sept. 27, 2013) (noting that *Nassar*'s heightened standard of causation applies on summary judgment); *Askins v. Belissary*, Civ. No. 4:12-cv-1856-RBH, 2014 WL 507279, at *5 (D.S.C. Feb. 6, 2014) (in granting summary judgment, court noted that *Nassar* requires a plaintiff to establish the causation element of her *prima facie* case pursuant to the but-for standard); *Walker v. Mod-U-Kraf Homes, LLC*, 988 F. Supp. 2d 589, 601 (W.D. Va. 2013) (same); *but see Skrzecz v. Gibson Island Corp.*, Civ. No. RDB-13-1796, 2014 WL 3400614, at *11 n. 11 (D. Md. July 11, 2014) (in discussing *Nassar* in the FSLA context, court notes that "establishing 'but-for' causation is the ultimate burden that a plaintiff must prove at trial, while at the summary judgment stage, a plaintiff faces a

less onerous burden of making a prima facie case of causality.") (internal citation omitted).

Thus, under *Nassar*, to establish a "but-for" causal relation, a plaintiff must now prove that "the desire to retaliate was the 'but-for' cause" of the adverse action taken against her. *Nassar*, 133 S. Ct. at 2528.

In this case, the only actionable adverse action is the RIF decision, which occurred in April 2011.[5] The only "protected activities" which Plaintiff alleges are (1) her complaint that a man was paid higher wages than she was, brought up in her grievance concerning Defendant's refusal to implement her promotion and raise (Compl. ¶ 17); and (2) Plaintiff's letter to Dr. Welbourne, Vice Chancellor for Student Affairs, alleging hostility and retaliation against her by Leonard Jones, together with a grievance she filed concerning the alleged intimidation, harassment and misconduct of Jones. (*Id.* ¶¶ 51, 54.)

At her deposition in March 2014, Plaintiff explained that her complaint that a man was being paid higher wages was actually contained in the "grievance" she filed in November 2006. (Pl.'s 3/20/14 Dep. at 37-39, Docket Entry 19-2). In this letter, addressed to Pat Chatt, the Interim Assistant Vice Chancellor of ITT, Plaintiff complained that she had not received the reclassification to a higher grade and salary increase that she claims were promised to her. (Pl.'s 3/20/14 Dep., Ex. 2, Docket Entry 19-2 at 8.) In a follow-up e-mail on December 1, 2006, Plaintiff clarified her questions regarding the promised classification, essentially complaining that the 5% proposed salary increase with the promotion to "DBA

---

[5] Under Title VII, a plaintiff must file a charge with the EEOC within either 180 or 300 days of the alleged discriminatory or retaliatory act. 42 U.S.C. ¶ 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Plaintiff filed her charge of discrimination with the EEOC on June 15, 2011. Thus, any discrete act occurring on or before August 19, 2010 may not form the basis for Plaintiff's retaliation claim. *Morgan*, 536 U.S. at 110. The only adverse action alleged in Plaintiff's complaint which occurred after August 19, 2010 is the reduction-in-force action, which was decided on March 15, 2011 and became effective on April 15, 2011.

Manager" would result in her being paid less than some of the employees who would be reporting to her. (*Id.*, Ex. 3, Docket Entry 19-2 at 10-11.) Plaintiff lists the three administrators in that category, all of whom are male. (*Id.*) This observation, contained in an email in which Plaintiff attempts to obtain clarification of a promotion and raise she claims were promised to her, simply does not rise to the level of a grievance or complaint that male employees in her position were being paid more than her. This email cannot in any fashion be viewed as "protected activity" within the meaning of Title VII. Plaintiff was simply complaining about her salary and classification in conjunction with her belief that she had been promised a promotion and a raise.

Plaintiff also alleges that she engaged in protected activity when she complained of harassment by Leonard Jones. (Compl. ¶¶ 51, 54.) Specifically, Plaintiff contends that her letter to Dr. Welbourne dated July 17, 2008 constitutes evidence that she complained of a hostile environment and that Jones retaliated against her for those complaints. While Plaintiff uses the term "hostile environment" in the letter, it is clear that the incident she is complaining of occurred when she asked Jones for clarification of her reclassification status. She claimed that Jones, her supervisor, stared at her without blinking for forty seconds and that she was scared because she was a woman. However, she did not complain that the intimidation or harassment was motivated by her sex or any other protected category under Title VII. She was merely recounting a disagreement between herself and her supervisor. The letter, and the later grievance based on the same incident, do not constitute protected activity under Title VII.

Moreover, even if Plaintiff demonstrated that she engaged in protected conduct under Title VII, she has failed to put forward any evidence linking the protected activities to the RIF which occurred more than five years later. Although "very close" temporal proximity can, in some cases, be sufficient alone to establish causation, an extended period of time between protected activity and alleged retaliation "suggests, by itself, no causality at all." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The Fourth Circuit has recently affirmed that a retaliation claim should be dismissed at the pleadings stage if the allegations show a substantial length of time between the protected activity and adverse employment action. *See Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x No. 11-1619, 2012 WL 4842041 (4th Cir. Oct. 12, 2012) (unpublished) (affirming dismissal of complaint and citing cases where periods of thirteen and twenty months negated an inference of causation). In this case, the five-year gap between the alleged protected activity and the RIF decision is insufficient to demonstrate a causal connection. *See, e.g., Paschual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233-34 (4th Cir. 2006) (unpublished) (affirming summary judgment when only evidence of causal connection involved a three to four month time gap). Therefore, because Plaintiff cannot show a causal connection through temporal proximity, she must prove, through other relevant evidence, retaliatory animus. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Here, Plaintiff has not shown that either of the decision-makers, Ellis and Pierce, nor any NCA&T administrators, had any retaliatory animus against her or any reason to retaliate against her.

Furthermore, even assuming Plaintiff established a *prima facie* case of discriminatory retaliation, Defendant has asserted a legitimate, nondiscriminatory reason for the adverse

employment action. The administrators involved in the RIF decision, Vice Chancellors Ellis and Pierce, testified that the decision to relocate Plaintiff's duties to DoIT was made after careful review and in order to increase efficiency and provide better services to Student Affairs. (Ellis Decl. ¶¶ 5-9; Pierce Decl. ¶¶ 6-12.) Plaintiff has failed to establish that Defendant's legitimate, non-retaliatory reasons for terminating her employment through a RIF were pretextual - either for complaining that she was paid less than male counterparts or for complaining of a hostile work environment. Accordingly, the court finds that no reasonable juror could determine that Defendant's proffered reason for the RIF was a pretext for retaliation.

Plaintiff has failed to cite any evidence that demonstrates a causal connection between her alleged protected activity and Defendant's RIF decision, let alone the "but-for" proof of causation that *Nassar* now requires. Rather, Plaintiff offers only conclusory allegations based on her assumptions, together with her self-serving deposition and affidavit testimony, which are unsupported by any admissible evidence. Therefore, the evidence presented by Defendant, combined with the lack of evidence submitted by Plaintiff, demonstrates there is no genuine issue of material fact as to Plaintiff's allegations of retaliatory motive.

This court, therefore, concludes that Plaintiff has failed to set forth a *prima facie* case of retaliation. Furthermore, even if Plaintiff had succeeded in making out a *prima facie* case, this court concludes that Plaintiff has failed to present evidence from which a reasonable fact finder could conclude that Defendant's proffered reasons for the RIF in this case are

only pretexts for discriminatory retaliation. The court recommends that Defendant be granted summary judgment on this claim.

### 3. Discriminatory Discharge Claim (Claim Four)

In her fourth claim for relief, Plaintiff alleges that Defendant discriminated against her because she was the only employee subjected to a RIF "which was discriminately applied against her in substance and in violation of procedural protections." (Compl. ¶ 89.) Just as with the retaliation claim, where there is no evidence of discrimination, Plaintiff must establish a *prima facie* case of discriminatory discharge using the *McDonnell Douglas* framework. 411 U.S. at 802; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If a plaintiff is successful in making a *prima facie* case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Reeves*, 530 U.S. at 142; *McDonnell Douglas*, 411 U.S. at 802. Once the defendant "produces sufficient evidence to support a nondiscriminatory explanation for its decision," the burden then shifts back to the plaintiff to show that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (internal citations omitted).

To establish a *prima facie* case of discriminatory discharge under Title VII, Plaintiff must show the following elements: (1) she is a member of a protected class; (2) she was qualified for the job and met the employer's legitimate expectations; (3) she was discharged despite her qualifications and performance; and (4) following her discharge the position either remained open or was filled by similarly qualified applicants outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc).

Because she was terminated as the result of a reduction in force decision, Plaintiff could also satisfy the fourth element of a *prima facie* case by introducing other probative evidence that indicates the employer did not treat her race and gender neutrally when making its decision. *Causey*, 162 F.3d at 802 ("Because [plaintiff] was terminated as part of a reduction in force, he could potentially satisfy the fourth element of a prima facie case by introducing other probative evidence that indicates the employer did not treat age and race neutrally when making its decision."); *see also Dugan v. Albemarle Cnty. School Bd.*, 293 F.3d 716, 720-21 n.1 (4th Cir. 2002) (discussing *McDonnell Douglas* framework in a RIF context); *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir. 1988) (noting that when a decision to terminate an employee as part of a reduction in force is not based on employee's job performance, fourth step of the *prima facie* case is met by showing that "persons outside the protected . . . class were retained in the same position or . . . there was some other evidence that the employer did not treat [the class] . . . neutrally in deciding to dismiss the plaintiff.").

Defendant here concedes that Plaintiff satisfies the first three factors of the *prima facie* case. (Def.'s Br. Supp. Summ. J. at 19 n.8, Docket Entry 20.) However, Defendant argues, and this court agrees, that Plaintiff has not shown any circumstances of the RIF, other than the first three *prima facie* elements, that suggest or give rise to an inference of discrimination from which a jury could determine that NCA&T did not treat Plaintiff's race and gender neutrally in handling the RIF. Plaintiff's mere allegations, and her unsupported assertions in her affidavit, are insufficient to show that her race and gender were not neutral factors in the decision to RIF Plaintiff.

Defendant has presented evidence indicating that the decision to terminate Plaintiff's position was based on non-discriminatory factors. The two administrators involved in the decision to move Plaintiff's duties to DoIT are both African-American females. (Pierce Aff. ¶ 2; Ellis Aff. ¶ 2.) Both Pierce and Ellis testified about the problems the University was experiencing with the R25 application and their belief that in order for the application to function adequately, it should be supported in its entirety by DoIT. (Pierce Decl. ¶¶ 7-8; Ellis Decl. ¶¶ 5-6.) They both testified as to the "purely business" reasons for the decision and specifically state that Plaintiff's protected status had nothing to do with the decision to eliminate Plaintiff's position. (Pierce Decl. ¶ 12; Ellis Decl. ¶ 9.) Plaintiff has simply not demonstrated that there was any discriminatory animus attached to the RIF decision.

Moreover, as Plaintiff concedes, Defendant here has articulated a legitimate non-discriminatory reason for the RIF, which was to increase the efficiency of the DoIT. As Ellis stated in her affidavit, "it made perfect business sense to me that if DoIT could absorb the work associated with the R25 application, then it was more efficient to move the application to DoIT." (Ellis Aff. ¶ 8.) Once that decision was made, and it was determined that DoIT could handle the work to support the R25 application without hiring additional employees, the decision to RIF Plaintiff's position was a legitimate and made sense.

Thus, to survive summary judgment, Plaintiff must demonstrate that Defendant's explanation is mere pretext. "To make this demonstration, the employee must show that as between the plaintiff's [protected status] and the defendant's explanation, [the protected status] was the more likely reason for the dismissal, or that the employer's proffered explanation is simply unworthy of credence." *Tuck v. Henkel Corp.*, 973 F.2d 371, 374-75

(4th Cir. 1992). Plaintiff, in attempting to show that Defendant's articulated, admittedly non-discriminatory reason for the RIF was pretext, argues that the decision in 2007 to transfer her to Student Affairs and out of DoIT was neither rational nor justified. She claims that the 2007 transfer was "emphatically retaliatory and not motivated by business rationality." (Pl.'s Br. at 16-17.) However, the 2007 transfer is not the subject of this lawsuit, and even if Plaintiff could show that the 2007 transfer was retaliatory and without legitimate reason, such showing is irrelevant to the claims in this case and does not prove that the 2011 RIF was a pretext for discrimination.

Plaintiff appears to argue that the fact that she was the only employee subject to the RIF demonstrates pretext. However, she has cited no cases which suggest that a particular number or percentage of employees must be terminated to constitute a proper reduction in force, or that a layoff of a single employee demonstrates pretext. In fact, a reduction in force situation is generally dictated by business considerations; the number of positions eliminated is not determinative on the pretext issue. *See Sagar v. Oracle Corp.*, 914 F. Supp. 2d 688, 695 (D. Md. 2012) (quoting *Conkwright v. Westinghouse Elec. Corp.*, 739 F. Supp. 1006, 1017-18 (D. Md. 1990)) ("It is well-established that 'in employment discrimination cases involving a reduction in force, it is not the court's duty to second guess the business judgment of defendant's employees and managers' or the manner in which the reduction in force is carried out."). Plaintiff's arguments, which are difficult to follow, and the evidence

offered in support thereof, do not demonstrate discriminatory animus or pretext in the decision to terminate Plaintiff's employment in 2011 as part of a reduction-in-force.[6]

Because Plaintiff has failed to meet her burden to demonstrate that Defendant's decision to terminate her employment through the RIF in 2011 was pretext for discrimination, there is no genuine issue of material fact as to this claim. This Court finds that summary judgment is appropriate on Claim Four.

### 4. Defendant's Evidentiary Objections

In its Reply Brief, Defendant raises several evidentiary objections to certain paragraphs of Plaintiff's affidavit and to certain exhibits attached to Plaintiff's affidavit. Defendant also objects to Footnote 1 in Plaintiff's brief and moves to strike this footnote. Defendant did not file a separate motion to strike. Because Defendant included its "objections" in a reply brief, without a separate pleading, it was not docketed as a motion to

---

[6] Plaintiff focuses much of her argument on the actions of Linda McAbee, who was hired as Vice Chancellor for Human Resources at NCA&T in 2007, just a few months before the first time RIF was considered in connection with Plaintiff. In fact, Plaintiff argues that "the 2011 RIF was the delayed implementation of a preplanned retaliatory RIF that was interrupted because Defendant did not have a qualified and trained Database Administrator Manager ready to step [up] and perform the work that Plaintiff was performing to keep the R-25 database functioning properly. From all appearances, Defendant was prepared to complete its retaliation binge against plaintiff in 2008 with the RIF papers that were prepared and circulated, but not issued, in accordance with Linda McAbee's 2008 'strategy.'" (Pl.'s Br. at 17.) Plaintiff offers no evidentiary or legal support for this theory. In fact, Plaintiff does not cite a single case in her opposition brief, other than mentioning *McDonnell Douglas* without proper citation, and thus apparently does not contest the legal standards set forth by Defendant in support of its motion for summary judgment. Plaintiff also does not separately divide her argument on her two Title VII claims, making it difficult to discern which statements apply to which claim. At any rate, Plaintiff's reliance on McAbee's alleged "strategy," developed in 2008, to eliminate Plaintiff's position is unavailing in the context of the present lawsuit.

strike, and Plaintiff did not have the opportunity to respond to the objections. Accordingly, the court will not specifically rule on Defendant's objections.[7]

The court notes, however, that an "affidavit . . . used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (formerly Fed. R. Civ. P. 56(e)); *see Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (noting that '[u]nder the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to") (internal quotation marks omitted); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (noting that summary judgment affidavits cannot be conclusory or based upon hearsay). This court, therefore, having examined the affidavit and exhibits in support thereof, has considered only those portions which comply with Rule 56. *See Williams v. Computer Scis. Corp.*, No. 1:08CV41, 2010 WL 3395293, at *4 (M.D.N.C. Aug. 23, 2010) (unpublished) (Sharp, M.J.) ("[T]he Court will not strike these exhibits but will consider them only to the extent that they comply with Fed. R. Civ. P. 56(c)(2)."); *Groves v.*

---

[7] The court is aware that the Federal Rules of Civil Procedure provide for a motion to strike "pleadings." Fed. R. Civ. P. 7(a). Because the challenged items here are not technically "pleadings" as defined by Rule 7(a), Defendant likely considered a separate motion to be unnecessary. However, in its present posture, Plaintiff did not have an opportunity to respond to the evidentiary objections. At any rate, as discussed, the court will not strike the materials identified by Defendant but has considered Defendant's objections to such materials in resolving the underlying motion for summary judgment. *See McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 921 n.9 (M.D.N.C. 2011) (*aff'd in part, rev'd in part and remanded on different grounds, Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012)) (finding "no need to strike the exhibits submitted [in support of a motion to dismiss] because a [m]otion to [s]trike under Rule 12(f) must be directed to a pleading, not an exhibit to a brief," but noting that the Court would consider objections to exhibits raised in motion to strike in evaluating merits of underlying motion to dismiss); *DeBerry v. Davis*, No. 1:08CV582, 2010 WL 1610430, at *6 (declining to grant motion to strike under Rule 12(f) because items challenged were not "pleadings" as defined by Rule 7(a), but observing that Court could consider arguments raised in motion to strike in carrying out its substantive review).

*AT & T Mobility*, No. 8:12-3329-TMC, 2014 WL 3809665, at *2 (D.S.C. Aug. 1, 2014) ("[T]he court will exclude any improper exhibits in considering summary judgment issues without formally entering an order striking them.").

## III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 19) be **GRANTED** and the action be **DISMISSED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 20, 2014